UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA LYNN
CHICORA,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

Case No. 2:15-cv-12690

Judge Gershwin A. Drain

Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 9) AND GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 12)**

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 9), **GRANT** Defendant's motion for summary judgment (DE 12),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff, Rhonda Lynn Chicora, brings this action – presumably under 42

U.S.C. §§ 405(g), 1383(c)(3) - for review of a final decision of the Commissioner

of Social Security ("Commissioner") denying her applications for disability

insurance (DI) and supplemental security income (SSI) benefits.  (DE1.)  This

matter is before the United States Magistrate Judge for a Report and

1

Recommendation on Plaintiff's motion for summary judgment (DE 9), the
Commissioner's cross motion for summary judgment (DE 12), Plaintiff's reply
(DE 13), Defendant's reply (DE 14) and the administrative record (DE 6).

### A.    Background

Plaintiff filed applications for DI and SSI benefits on October 16, 2012 and
October 22, 2012, alleging that she has been disabled since October 30, 2011, at
age 43.  (R. at 217-226.)[1]  Plaintiff alleges disability as a result of ruptured discs in
her back, herniated discs in her back, neuropathy, arthritis, depression and total
right knee replacement.  (R. at 267.)  Plaintiff's applications were denied on
January 31, 2013.  (R. at 110-136; *see also* R. at 147-165.)

On February 4, 2013, Plaintiff sought a *de novo* hearing before an
Administrative Law Judge ("ALJ").  (R. at 166-167.)  ALJ Patricia McKay held a
video hearing on December 16, 2013, at which Plaintiff and her counsel appeared
and Vocational Expert (VE) testified.  (R. at 36-87.)  On March 22, 2014, ALJ
McKay determined that Plaintiff was not disabled within the meaning of the Social
Security Act.  (R. at 15-33.)

On May 1, 2014, Plaintiff requested review of the hearing decision.  (R. at
12-13; *see also* R. at 8-11, 297-300.)  On June 9, 2015, the Appeals Council denied

---

[1] Plaintiff also filed applications for DI and SSI benefits on April 3, 2012.  (R. at
202-216.)  These were denied on June 18, 2012.  (R. at 88-109; *see also* R. at 137-
144.)

Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ McKay's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on July 31, 2015.  (DE 1.)

### B.    Plaintiff's Mental Health History

Plaintiff alleges in the field office disability report that she has been disabled since October 30, 2011.  (*See* R. at 263.)  Plaintiff's medical records span the period from May 18, 2009 through December 26, 2013.  (R. at 301-550 [Ex 1F – Ex. 12F].)   Here, I summarize only the limited records which are at issue in this appeal, except as noted, leaving a more detailed discussion of the record to the analysis section which appears below.

On May 15, 2013, Plaintiff's treating physician and family practitioner, Dr. Jane I. Castillo, completed a medical opinion questionnaire regarding mental impairments.  Among other things, she noted that Plaintiff had severe depression, had been admitted to a mental health facility for work-related stress (3 days inpatient)[2] and would, on average, be absent from work more than twice per month due to impairments or treatment; however, Dr. Castillo also noted that Plaintiff's

---

[2] According to Dr. Castillo's October 31, 2012 medical source statement regarding physical impairment, Plaintiff was admitted to a psychiatric unit on June 13, 2010 for severe depression with suicidal thoughts (R. at 398), although the actual records from this admission were not presented to the ALJ.  More on that later.

prognosis was stable and she could manage benefits in her own best interest.  (R. at 547-549 [Ex. 12F].)[3]  Progress notes filed by Dr. Castillo that same day state that, "She has a normal mood and affect.  Her behavior is normal. Judgment and thought content normal." (R. at 488.)

On January 10, 2013, Plaintiff was seen by Nathalie Menendes, Psy.D., for a psychiatric/psychological evaluation.  Dr. Menendes's report noted that Plaintiff "endorsed suicidal ideation," and assessed Plaintiff's Global Assessment of Functioning (GAF) at 42.  (R. at 399-402 [Ex. 6F].)

Although not at issue in this appeal and of limited value, I do further observe that Dr. Ringley (the gastroenterologist or surgeon who performed Plaintiff's September 24, 2013 EGJ) and Plaintiff's pain specialists (Drs. Papenfuse and Bearer) noted what appears to be a self-reported history of anxiety and depression, sometimes characterized as "secondary to chronic pain," although they also in places reflect a *denial* of "anxiety, depression, hallucinations, delusions, feeling confused, difficulty sleeping, compulsive behaviors, suicidal behavior, excessive

---

[3] This exhibit appears to have been received *after* the ALJ's March 22, 2014 decision.  (*See* R. at 33, R. at 547-550 [Ex. 12F].)  The Appeals Council made it part of the record.  (R. at 4.)

anger [or] [p]ersonality change." (R. at 418, 424, 433, 438 [Ex. 8F], 522, 525, 532 [Ex. 11F]; *see also,* 409, 412, 415, 418, 421, 428, 431.)[4]

### C. Hearing Testimony (December 16, 2013)

#### 1. Plaintiff's Testimony

At the time of the hearing, Plaintiff was 45 years of age and weighed approximately 260 pounds, 9 years post gastric bypass surgery. (R. at 44; *see also* R. at 62, 352, 420-421.) Plaintiff was living in Saginaw, Michigan, in a one-story house with her husband and 11 ½ year-old daughter. (R. at 43-44; *see also* R. at 201.)

Plaintiff testified that she stopped working on October 30, 2011, seemingly when her back got worse around the time of a nerve deadening procedure at Matrix Pain Management Center. (R. at 45, 59; *see also* R. at 52.) According to Plaintiff, she was let go, because her "attendance was not really good," and she "had run out of short-term disability." (R. at 45.) Her last job was at Covenant Health Care as a scheduler, and she has not received any unemployment benefits since she stopped working. (R. at 48.)

Plaintiff testified that, in an average school day, she gets herself and her daughter up at 6 a.m. (R. at 49-50.) Plaintiff is usually in her recliner for most of

---

[4] The 31 pages of records from Dr. Ringley of Mid Michigan Surgical Specialists (which seem to include some records from Dr. Castillo (R. at 537-544) also appear to have been received *after* the ALJ's decision. (*See* R. at 4, 33, 514-546 [Ex. 11F].)

the day (7 to 8 hours) until about 9 p.m.  (R. at 50, 61.)  She sleeps a lot.  (R. at 50.)  Most of the time, she is alone during the day.  She does some cooking.  She is able to take care of her hygiene and shower.  (R. at 50; *see also* R. at 53, 55.)  Her husband does most of the laundry, although she can sit for a few minutes and fold clothes.  (R. at 51.)  Plaintiff's husband and daughter help with the housekeeping tasks.  (R. at 56-57.)  She might go out once or twice per month to the local grocery store with her husband or her daughter-in-law.  (R. at 68.)  She tries to read; however, it seems like she has lost interest in it, and she has a hard time concentrating.  (R. at 51.)  She no longer has hobbies or does anything independently.  (R. at 67-68.)

Plaintiff further testified that, in addition to her physical ailments, she has had depression and anxiety.  (R. at 53.)  She takes an antidepressant but is not currently treating with a specialist, seemingly due to insurance issues and finding a specialist with whom she is comfortable, because "I just feel like they don't listen." (R. at 53-54; *see also* R. at 57-58.)  Dr. Castillo prescribes medication for her mental state.  (R. at 67.)

Plaintiff explained that her medicine makes her sleepy, and she does not concentrate too much.  (R. at 50, 62.)  The Orphenadrine makes her shaky, the pain medicine makes it difficult to focus or concentrate, and the muscle relaxer "really just knocks [her] out."  (R. at 54.)

6

When asked why she feels she is unable to work, Plaintiff testified, "[m]y pain is so focused in my mind that I hardly think – can think of anything else." She has a difficult time concentrating, gets emotional, and has difficulty standing or sitting or walking.  (R. at 55; *see also* R. at 66.)  When asked about her 20-year work history, Plaintiff stated, "I loved working[,]" and testified that she got along well with people.  (R. at 59-60.)  However, Plaintiff does not think she could perform a job folding towels with a sit/stand option, due to emotional breakdown. (R. at 60-61.)  She easily gets very emotional, and she does not "really have any self-esteem[,]" because "the function of [her] life is horrible."  This affects her relationships with her husband and daughter, and her physical state affects her relationships with her grandchildren.  (R. at 67; *see also* R. at 51-52.)  She stated that she no longer has friends.  (R. at 68.)

It is noted that the ALJ found that Plaintiff's statements were not entirely credible, and she pointed out several inconsistencies between the testimony and the record.  (R. at 23, 24-27.)  This credibility finding is not raised as an issue on appeal.

### 2.   Vocational Expert Testimony

In addition to limitations to account for Plaintiff's physical limitations, VE Rosko testified that a hypothetical individual of Plaintiff's age, education and past work experience who could perform a full range of *light exertional work* with

additional mental limitations (simple and routine in nature, only occasional contact with social contacts, such as workers, members of the general public and supervisors) could not perform any of Plaintiff's past jobs, as all were either semiskilled or skilled.  (R. at 68-85; *see also* R. at 70-78.)  However, the VE further testified that such an individual could perform the *unskilled* jobs of a sorter, packer or assembler, and that such an individual could perform *unskilled* work at the *sedentary exertional level* as a sorter, assembler or product finisher.  (R. at 79-80.)  When asked to assume the Plaintiff's testimony was fully credible, the VE stated that medication side effects, among other things, would present a significant problem.  (R. at 83.)

### D.    The Administrative Decision[5]

---

[5] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4); see also 20 C.F.R. § 416.920.  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

ALJ McKay rendered her decision on March 22, 2014 and determined at the outset that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015 and that Plaintiff has not engaged in substantial gainful activity since October 30, 2011, the alleged onset date.  (R. at 20.)

At Step 2, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the bilateral knees with a history of total knee replacement on the right as well as derangement of the left knee; minimal degenerative joint disease of the bilateral sacroiliac joints with phleboliths in the pelvis; degenerative disc disease with protruding discs and annular tear of the lumbar spine status post pulsed radiofrequency ablation and epidural injections; and obesity with a history of gastric bypass and hernia repair.  (R. at 20-22.)

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 22.)

At Step 4, the ALJ found that Plaintiff has the RFC to perform sedentary work with various physical and mental limitations, the latter of which include simple and routine work and only occasional contact with coworkers, supervisors,

---

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

and the general public.  (R. at 22-27.)  Moreover, the ALJ found that Plaintiff is unable to perform any past relevant work.  (R. at 27-28.)

At Step 5, having considered Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 28-29.)

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

10

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.   Analysis

In her motion for summary judgment, Plaintiff argues that the ALJ's

decision is "reversibly erroneous," due to "the presence of very substantial

psychiatric evidence of total disability . . . ." (DE 9 at 14-20.) Although Plaintiff's

argument is not organized into separate sections, the beginning statement alleges that:  **(A)** she met and/or equaled Listings 12.03/12.04/12.05 and/or 12.08 (each of which evaluates an adult mental disorder); **(B)** the ALJ improperly discounted the opinions of treating sources regarding Plaintiff's mental impairments (including the Secretary's examiner's assessment that Plaintiff's GAF was 42); and **(C)** Plaintiff had severe depression and would be anticipated to miss more than 3 days of work per month.  (DE 9 at 14.)  The Commissioner opposes the motion and seeks affirmance.

### 1.     The substance of Plaintiff's argument is limited to the ALJ's assessment of her mental health.

In her July 31, 2015 complaint, Plaintiff lists several "severe and disabling conditions" or "conditions that have just continued to get worse resulting in disability . . .[,]" some of which are physical and some of which are mental.  (*See* DE 1 ¶ 8.)  Yet, as the Court considers Plaintiff's December 14, 2015 motion for summary judgment (DE 9), it is mindful that "[a] brief supporting a motion or response must, at the beginning, contain a concise statement of the issues presented . . . ."  E.D. Mich. LR 7.1(d)(2).  Although Plaintiff's "Statement of Facts and Proceedings" contains some discussion of Plaintiff's physical impairments, Plaintiff's "issues presented for judicial review" and "argument" only challenge the ALJ's assessment of Plaintiff's mental health impairments.  (*Compare* DE 9 at 2-14, DE 9 at 14; *see also* DE 9 at 14-20.)

I do acknowledge Plaintiff's statement in the last two substantive sentences of her brief that the ALJ should be reversed because she "ignores the overwhelming physical problems that the Claimant has, one knee replacement, one knee needing a replacement, herniated discs with radicular pain, vast medications needed to treat pain, and the corollary effects of the pain medication on the ability of the Claimant to function."  (DE 9 at 20.)  However, this argument is undeveloped and deemed waived.  *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Elder,* 90 F.3d 1110, 1118 (6th Cir.1996)). Given that Plaintiff's "issues presented" are limited to the ALJ's evaluation of Plaintiff's mental RFC (DE 9 at 14), as are all but a brief reference to "orthopedic examiners" and two sentences in her seven page argument (*see* DE 9 at 16, 20), and given that these last two "throw away" sentences contain a grossly undeveloped argument challenging the ALJ's evaluation of Plaintiff's physical RFC (DE 9 at 20), this report and recommendation will be limited to addressing the ALJ's assessment of Plaintiff's mental RFC.[6]

---

[6] This is so, even though Plaintiff's March 8, 2016 reply argues that the Commissioner "does not refute, or even address the Plaintiff's severe impairments involving her *back, legs, and concomitant pain* that laid the foundation for the Plaintiff's mental disability[,]" or that Plaintiff's emotional disability "was in Substantial Part Caused by *Severe Physical Impairments* . . . ."  (DE 13 at 2-3, 3-7

    **2.**    **To the extent Plaintiff challenges the ALJ's Step 2 assessment that her depression is not severe, it is unavailing.**

Plaintiff seems to take issue with the ALJ's Step 2 conclusion that Plaintiff's medically determinable mental impairment of depression is not severe. The SSA assesses severity "according to the functional limitations imposed by your medically determinable mental impairment(s)." Listing 12.00(C). Functional limitations are assessed "using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*.

Plaintiff's argument as to the *first three functional areas* is unavailing. When Plaintiff alleges that her "mental problems were not *mild* nor do they only cause '*minimal*' limitations[,]" (DE 9 at 16 (emphases added)), she is presumably challenging the ALJ's Step 2 conclusions that Plaintiff's depression "does not cause more than *minimal* limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere[,]" and "causes no more than

---

(emphases added).)  Even though the Commissioner has replied to this filing (DE 14), it remains that "[a]rguments raised for the first time in a reply brief are generally not properly before the court."  *Emmons v. Comm'r of Soc. Sec.*, No. CIV.A. 2:12-15235, 2014 WL 1304936, at *1 (E.D. Mich. Feb. 13, 2014), *report and recommendation adopted*, No. 12-15235, 2014 WL 1304938 (E.D. Mich. Mar. 31, 2014); *see also Martinez v. Comm'r of Soc. Sec.*, No. 09-13700, 2011 WL 1233479, at *2 n.1 (E.D. Mich. Mar. 30, 2011) ("In a letter dated March 3, 2010, which was construed by the magistrate judge as a reply brief, Martinez described her impairments and diagnoses of disability. However, the new arguments that she raised for the first time in the reply brief were correctly disregarded by the magistrate judge.").

'*mild*' limitation in any of the first three functional areas . . . ."  (R. at 21-22

(emphases added).)  This argument seems to be based upon the ALJ allegedly:

- taking the opinion of Dr. Menendes "out of context," considering that it mentions Plaintiff's hospitalization after an overdose (R. at 21, 399-402);

- ignoring the opinions of Dr. Castillo, one of which references Plaintiff's June 2010 hospitalization "for severe depression with suicidal thoughts[,]" and another which rates Plaintiff's ability to "perform at a consistent pace without an unreasonable number and length of rest periods" as "poor or none" (R. at 396-398, 547-549);

- taking "out of context" Dr. Castillo's March 5, 2013 and May 15, 2013 progress notes, each of which indicates "normal mood" (R. at 22, 488, 501).

(DE 9 at 3-4, 18; *see also* DE 9 at 17.)  However, even if the ALJ's opinion does

not expressly mention "suicide" or "hospitalization," it is clear that the ALJ did

consider the records in which these were mentioned, namely: Exhibit 5F (R. at 27,

396-398), Exhibit 6F (R. at 21, 26-27, 399-402) and Exhibit 10F (R. at 22, 27, 468-

513).   Moreover, as discussed above, it appears that Exhibit 12F (R. at 547-550)

was not before the ALJ, while the ALJ's analysis of  the *weight* assigned to Dr.

Menendes's January 10, 2013 opinion and Dr. Castillo's October 31, 2012 opinion

(R. at 27, 396-398 [Ex. 5F], 399-402 [Ex. 6F]) is addressed below.

Plaintiff's argument as to *the fourth functional area* – which is the *crux* of

her Step 2 argument – is also unavailing.  Plaintiff contends that the ALJ erred in

15

opining that "there were no episodes of decompensation." (DE 9 at 16.)[7] In fact, the ALJ found that Plaintiff "has experienced no episodes of decompensation *which have been of extended duration*." (R. at 22 (emphasis added).) The veracity of this statement by the ALJ is more appropriately addressed along with Plaintiff's Step 3 Listing argument.

### 3. Plaintiff's Step 3 Listing argument is not well developed and, in any event, is unavailing.

Plaintiff's brief makes several mentions of the Listings: (a) In her bolded introductory sub-heading, Plaintiff alleges that "she met and/or equaled the requirements of listed impairment 12.03/12.04/12.06 and/or 12.08[,]" (DE 9 at 14);[8] (b) within the body of her argument, she contends that the ALJ "failed to fully evaluate the Plaintiff's numerous emotional problems, and other disorders, as well as the notes, records, deposition of her physicians and the referral by the Secretary to Dr. Nathalie Menendes, in the context of mental listings 12.00 et

---

[7] Episodes of decompensation "are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Listing 12.00(C)(4).

[8] These are listings for "Schizophrenic, paranoid and other psychotic disorders," "Affective disorders," "Anxiety-related disorders," and "Personality disorders." *See* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

seq.[,]" (DE 9 at 15); and (c) in her conclusion, she contends she "met or equaled

numerous Listings[,]" (DE 9 at 20).

However, Plaintiff has not shown this Court how she met any of these four

listings.  "[I]t is Plaintiff's burden at step 3 of the sequential analysis to prove that

she meets or equals the listing's diagnostic description and one of the four severity

criteria specified in parts A, B, C, or D."  *Franklin v. Comm'r of Soc. Sec.*, No.

1:15-CV-463, 2016 WL 158589, at *3 (W.D. Mich. Jan. 13, 2016); *see also*

*Helmker v. Comm'r of Soc. Sec.*, No. 1:14-CV-0902, 2015 WL 7721225, at *5

(W.D. Mich. Nov. 30, 2015).

To be sure, Plaintiff discusses "evidence of mental/emotional disability,"

within her "statement of facts and proceedings[,]" specifically referencing certain

records from Dr. Castillo (R. at 396, 397, 398 [Ex. 5F], 406 [Ex. 7F], 488, 500,

503, 506 [Ex. 10F] & 532 [Ex. 11F]) and contending Dr. Castillo's report is

consistent with that of Nathalie Menendes, Psy.D. (R. at 399-402 [Ex. 6F]).  (*See*

DE 9 at 12-14.).  Also, Plaintiff takes issue with the Secretary or prior counsel's

failure to procure the Bay Medical records documenting her 2010 suicide attempt,

which is also referenced in Dr. Castillo's May 16, 2013 progress notes (R. at 491)

and in Dr. Castillo's May 15, 2013 medical opinion questionnaire regarding mental impairments (R. at 549). (DE 9 at 13 n.3; *see also* R. at 437.)[9]

Nonetheless, Plaintiff's summaries of these medical records are not a substitute for illustrating to the Court how Plaintiff has met the particular requirements of these above-cited listings. "[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff not having accomplished this task, her Step 3 argument should be dismissed as undeveloped.

Moreover, to the extent Plaintiff challenges the ALJ's conclusion that Plaintiff has experienced "no episodes of decompensation which have been of extended duration[,]" (R. at 22), Plaintiff has not satisfied her burden. Plaintiff argues that her 2010 attempt to commit suicide is evidence of "decompensation[,]" also seeming to point to Dr. Castillo's October 31, 2012 or May 15, 2013 opinions (R. at 396-398, 547-549), her May 16, 2013 office notes (R. at 491) and Dr. Menendes's January 10, 2013 opinions (R. at 399-402) regarding severe depression. (*See* DE 9 at 16-17; *see also* DE 9 at 12, 13 n.3, 18) While these

---

[9] Over the course of Plaintiff's applications for social security benefits, she has been represented by several attorneys. (*See* R. at 145-146, 35, 168-169, 34, 199-200, 7, , 6.)

18

instances may be "evidence of decompensation," that, alone, is not the Step 3 standard involved when assessing the Listings in question here.

Instead, the various criteria for Listings 12.02 through 12.08 and Listing 12.10 include "repeated episodes of decompensation, each of extended duration" which means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Listing 12.00(C)(4). Thus, if Plaintiff is relying upon one of the "episodes of decompensation" criteria, as opposed to some other criteria, as her manner of satisfying Listings 12.03, 12.04, 12.06 and/or 12.08, she must show "*repeated*" episodes of decompensation, "*each of extended duration*." Plaintiff generally states that "[t]here ha[ve] been countless episodes of Claimant's worsening of symptoms, inability to adapt to normal life changes and stress, difficulties in maintaining social functioning etc." (DE 9 at 17.) Yet, in addition to the above-mentioned reference to her one-time suicide attempt, her support for "countless episodes" includes references to the treating physician's and the consultative examiner's opinions that Plaintiff's depression was severe, and the consultative examiner's assessment of a global assessment of functioning (GAF) of 42. (R. at 396, 398, 402, DE 9 at 17-18.)[10] However, references to Dr. Castillo's

---

[10] The GAF scale was used to report a clinician's judgment of an individual's overall level of functioning. Clinicians selected a specific GAF score within the ten-point range by evaluating whether the individual was functioning at the higher or lower end of the range. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association,

October 31, 2012 or May 2013 diagnoses of severe depression and Dr. Menendes's

January 10, 2013 diagnosis of "major depressive disorder, recurrent, severe,

without psychotic features" do not illustrate "*repeated*" episodes of

decompensation, "*each of extended duration*."  20 C.F.R. § Pt. 404, Subpt. P, App.

1, § 12.00(C)(4).[11]

> ### 4.   The ALJ properly weighed the opinion evidence at Step 4 when determining that Plaintiff had the mental RFC to perform "simple and routine work" with "occasional contact with coworkers, supervisors, and the general public."

In her Step 4 RFC analysis, the ALJ determined that Plaintiff's RFC had the

*mental limitations* of "simple and routine work," and "occasional contact with

coworkers, supervisors, and the general public."  (R. at 22-27.)  Plaintiff contends

that ALJ McKay improperly discounted the opinions of treating sources regarding

Plaintiff's mental impairments of depression and associated disorders and that this

error stems from the ALJ's failure to give proper weight to the opinions and

---

4th ed. text rev. 2000) (DSM-IV-TR).  A GAF score of 41–50 "indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'"  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (quoting *DSM–IV–TR at 34* (capitalization and boldface omitted)).  However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders."  *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

[11] In fact, on January 29, 2013, non-examining state agency psychological consultant Wayne Hill, Ph.D. determined that there were no repeated episodes of decompensation, each of extended duration.  (R. at 115, 127.)

assessments of Dr. Castillo and Dr. Menendes in accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c).  (*See* DE 9 at 14, 17-20.)

> **a.    Evaluating opinion evidence under 20 C.F.R. §§ 404.1527, 416.927**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).

To qualify as a treating source, the physician must have an "ongoing treatment

relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[12]  *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.; see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).

However, while an ALJ must "always give good reasons in [the ALJ's]

notice of determination or decision for the weight [the ALJ] give[s] your treating

---

[12] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

source's opinion," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11–CV–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir.2010)). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Commissioner Social Sec. Admin.*, 414 F.App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson* , 378 F.3d at 547). *See also, Betty v. Comm'r of Soc.*

23

*Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016),

*report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554

(E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the

importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir.1999). The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

For the reasons stated below, I find that the ALJ's opinion gives good

reasons for discounting the medical opinions at issue and that the Commissioner

has met the goal of 20 C.F.R. §§ 404.1527(c), 416.927(c). *Francis*, 414 F.App'x at

805 (quoting *Wilson,* 378 F.3d at 547). I also find that the opinion "'permits the

claimant and [this] reviewing court a clear understanding of the reasons for the

weight given [the] treating physician's opinion[.]'" *Francis,* 414 F.App'x at 805 (quoting *Friend*, 375 F.App'x at 550).

### b.    Jane I. Castillo, M.D. (treating family practitioner)

Treating family practitioner Dr. Castillo's October 31, 2012 "Medical Source Statement Concerning the Nature and Severity of an Individual's *Physical* Impairment" lists "severe depression" among her diagnoses and additionally notes that "[p]atient was admitted to Bay Med Psychiatric Unit on [June 13, 2010] for severe depression with suicidal thoughts." (R. at 396, 398 [Ex. 5F] (emphasis added).) In assigning "no weight" to this opinion, ALJ McKay explained that Dr. Castillo's opinion "appears to rest at least in part on an assessment of an impairment *outside the doctor's area of expertise*[.]" (R. at 27 (emphasis added).)

I do acknowledge, as noted above, the administrative record contains evidence that Plaintiff was treated by Dr. Castillo during 2011, 2012 and 2013. (R. at 342-369 [Ex. 2F], R. at 468-513 [Ex. 10F]; *see also* R. at 537-544 [Ex. 11F]). Thus, she could provide the longitudinal picture contemplated by the regulations. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.").

Still, the Court should conclude that the ALJ properly discounted, or declined to give controlling weight to, *family practitioner* Dr. Castillo's opinion on Plaintiff's *mental impairment(s)*. The SSA generally gives "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). In other words, "the administrative law judge is expressly permitted to consider the medical specialty of a treating physician." *Ellars v. Comm'r of Soc. Sec.*, No. 2:14-CV-2050, 2015 WL 3537442, at *4 (S.D. Ohio June 4, 2015) (citing 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5)), *report and recommendation adopted sub nom. Ellars v. Colvin*, No. 2:14-CV-2050, 2015 WL 4538392 (S.D. Ohio July 27, 2015), *aff'd sub nom. Ellars v. Comm'r of Soc. Sec.*, No. 15-4039, 2016 WL 2610234 (6th Cir. May 6, 2016). Thus, it was appropriate for ALJ McKay to discount Dr. Castillo's opinion of Plaintiff's depression on the basis that it was outside the physician's area of "specialization." *See id*. ("It was therefore not improper for the administrative law judge to consider that Dr. Schall is a general practitioner who does not specialize in cardiac and vascular impairments.").

To the extent Plaintiff argues that the ALJ took Dr. Castillo's comments on "normal mood" out of context (DE 9 at 18), it is not well developed. Dr. Castillo's March and May 2013 progress notes do indicate that Plaintiff "has a normal mood

and affect.  Her behavior is normal.  Judgment and thought content normal."  (R. at 488, 501.)  Furthermore, although the March 2013 diagnoses includes "psychosis," Dr. Castillo's psychiatric notes further state:  "Patient is very clear in her history and answering of my questions.  There is no evidence of delirium or overt psychosis."  (R. at 501.)  On the face of it, these two statements do appear to be inconsistent.  Plaintiff's argument does not elaborate on the idea that the ALJ's acknowledgment of Dr. Castillo's finding of a normal mood is somehow "incorrect and ignores direct statements from Dr. Castillo to the contrary."  (*See* DE 9 at 20; *see also* R. at 18.)  Thus, Plaintiff has not met her burden to challenge this Step 4 finding by the ALJ.  *See Walters*, 127 F.3d at 529.[13]

### c.      Nathalie Menendes, Psy.D. (consultative examiner)

---

[13] Plaintiff contends that Dr. Castillo's May 15, 2013 mental impairments opinion (R. at 547-550) is consistent with her October 31, 2012 assessment of Plaintiff's physical impairment (R. at 396-398) and consultative examiner Dr. Menendes's January 10, 2013 psychiatric/psychological medical report (R. at 399-402).  (*See* DE 9 at 18.)  As previously noted, Dr. Castillo's mental impairments opinion was not before the ALJ at the time of her March 22, 2014 decision.  Nonetheless, I note that, while Dr. Menendes's report notes endorsement of suicidal ideation (R. at 399, 401), Dr. Castillo's March 5, 2013 progress notes were negative for suicidal ideas (R. at 500), and Dr. Ringley made similar notes in April and May 2013, although these notes were also not before ALJ McKay.  (R. at 522, 525.)  Furthermore, while Dr. Castillo's May 2013 reports indicated that Plaintiff would be absent from work more than twice per month (R. at 406, 549; *see also* R. at 398), the ALJ did not find Plaintiff's statements entirely credible (R. at 23).  Also, while Dr. Castillo opined that Plaintiff had "poor or no" ability to "perform at a consistent pace without an unreasonable number and length of rest periods," the form also rates Plaintiff's abilities to "interact appropriately with the general public," and "maintain socially appropriate behavior" as "good."  (R. at 547-548.)

On January 10, 2013, consultative examiner Nathalie Menendes, Psy. D. issued a psychiatric/psychological medical report.  She diagnosed Plaintiff with recurrent, severe major depressive disorder without psychotic features and anxiety disorder not otherwise specified (NOS).  Dr. Menendes indicated that Plaintiff's prognosis was guarded but that she was able to manage her benefit funds.  (R. at 399-402 [Ex. 6F].)

At Step 4, the ALJ assigned "no persuasive weight" to Dr. Menendes's report.  (R. at 27.)  In so doing, she noted:

> The diagnoses and Global Assessment of Functioning (GAF) cited in connection with the consultative examination with Nathalie Menendes, Psy.D. ([R. at 402]) were not Dr. Menendes'.  The report indicated that this "section of the evaluation was not completed as the evaluator was called away from work due to a family emergency." ([R. at 401]).  Moreover, the ultimate conclusions regarding the diagnoses and GAF scores are inconsistent with the observations and report that was completed by Dr. Menendes.

(R. at 27.)

Preliminarily, "the opinion of a consultative examiner . . . is usually entitled to less weight than that of a treating physician."  *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) (referencing 20 C.F.R. § 404.1527(d)).  Stated otherwise, "the opinion of a consultative physician hired by the government to defend a disability claim ordinarily is entitled to less weight than that of a treating physician."  *Craft v. Sec'y of Health & Human Servs.*, 812 F.2d 1406 (6th Cir. 1987).  Still, as with the ALJ's treatment of treating physician Dr. Castillo's

28

assessment, the Court should conclude that the ALJ properly discounted, or declined to give controlling weight to, Dr. Menendes's January 10, 2013 report (R. at 399-402).

I do acknowledge Plaintiff's concern that the ALJ improperly interpreted the weight of this opinion based on the statement that "the evaluator was called away from work due to a family emergency." (R. at 401, DE 9 at 17-18.) It seems likely, as Plaintiff purports, that "after Dr. Menende[s] was called away, she received follow up information and unquestionably made diagnosis and prognosis." (DE 9 at 17.) Nevertheless, it appears that the ALJ found Dr. Menendes's report's diagnoses and GAF score – presumably the final page of the report (R. at 402) - *inconsistent* with the other sections of her observations and report – presumably the "general observations," "mental status examination attitude and behavior," "stream of mental activity," and "mental trend and thought content" sections (R. at 401). (R. at 27.)[14]  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a

_____

[14] In fact, at Step 2, the ALJ cited this page, observing: "In terms of her mental health, during a consultative psychological examination with Nathalie Menendes, Psy. D., in January 2013, it was noted that her hygiene was good. She was cooperative, but tearful and seemed anxious. Nevertheless, her contact with reality was good and insight was adequate, but her motor-activity was fidgety. Her motivation is low, but she was reported as *able to function independently.* Moreover, her thoughts were spontaneous, logical, and organized and there was no evidence of hallucinations, delusions, persecutions, or other unusual thought content was noted during the interview ([R. at 401])." (R. at 21.)

29

whole, the more weight we will give to that opinion."). This justification was given even though "[a]n ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who . . . have examined but not treated a claimant." *Perry ex rel. G.D. v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) (referencing, in part, 20 C.F.R. § 416.927(c)(2)). Moreover, as the Commissioner points out, "the Sixth Circuit has consistently held that [GAF] scores are not probative or entitled to weight, and that failure to even discuss such scores is harmless." (DE 12 at 17; *see Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) ("no particular amount of weight is required to be placed on a GAF score.")).[15]

Moreover, even if the ALJ erred at Step 2 by not finding Plaintiff's depression to constitute a severe impairment (R. at 23), the ALJ considered depression again at Step 4, specifically referring to Plaintiff's disability reports (R. at 23, 240, 267) and Dr. Castillo's October 31, 2012 medical source statement regarding physical impairment (R. at 27, 396-398). Thus, having considered depression at Step 4, any error at Step 2 as to the severity of Plaintiff's depression

---

[15] *See also Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013) ("the ALJ was not required to consider Keeler's GAF scores[.]"), *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006) ("Any failure to reference Global Assessment Functioning scores or to compare different scores attributed to the same subject, without more, does not require reversal."), *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.").

was rendered harmless. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."), *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

### d.    Wayne Hill, Ph.D. (non-examining state agency psychological consultant)

On January 29, 2013, non-examining state agency psychological consultant Wayne Hill, Ph.D. determined that Plaintiff's medically determinable impairments included severe affective disorders. (R. at 114, 126.) However, as to the "A" Criteria of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders), Dr. Hill further noted: "[a] medically determinable impairment is

present that does not precisely satisfy the diagnostic criteria above[.]"  (R. at 115,

127.)  In addition, Dr. Hill's mental RFC explained that Plaintiff's symptoms of

anxiety and depression "interfere with concentration and persistence, but would not

prevent claimant from performing SRT [simple and routine tasks][,]" and that

Plaintiff "retains the mental, residual capacity to perform one and two step tasks on

a sustained basis."  (R. at 119, 131.)

Although the ALJ noted that Dr. Hill did not cite specific reasons for his

conclusion that Plaintiff had greater "Paragraph B" limitations in January 2013,[16]

the ALJ found Dr. Hill's conclusion about Plaintiff's ability to perform one and

two-step tasks "consistent with the [RFC] restriction to only simple and routine

work due to her pain level[,]" and ultimately concluded that Plaintiff "does not

have a severe mental impairment."  (R. at 21.)

"[A]n ALJ can properly rely on the conclusions of a non-examining, record

reviewing physician to support an RFC assessment."  *Gazella v. Comm'r of Soc.

Sec.*, No. 13-11099, 2014 WL 555192, at *11 n.2 (E.D. Mich. Feb. 12, 2014)

(Zatkoff, J., adopting report and recommendation of Hluchaniuk, M.J.).  Where, as

here, the non-examining source's opinion is apparently consistent with the overall

---

[16] By comparison, the June 18, 2012 decision of non-examining state agency
psychological consultant Ron Marshall, Ph.D. determines that affective disorders
were a non-severe medically determinable impairment and that, as to the "A"
Criteria of Listing 12.04 (Affective Disorders), further noted "[a] medically
determinable impairment is present that does not precisely satisfy the diagnostic
criteria above[.]"  (R. at 91, 101-102.)

record (which Plaintiff does not challenge), and the treating source's opinion is not, the ALJ is permitted to give greater weight to the former than to the latter. SSR 96-6P (S.S.A. July 2, 1996); *see also Thomas v. Comm'r of Soc. Sec.*, No. 12-11545, 2013 WL 4550198, at *13 (E.D. Mich. Aug. 28, 2013).

### G.    Conclusion

In sum, I conclude that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 13), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: August 8, 2016            s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 8, 2016, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti